NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0324n.06

No. 24-5903

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 22, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| BRIAN EUGENE HUX, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) | |
| RANDALL L. WILLIAMS, | ) | |
| Defendant-Appellant | ) | OPINION |
| KNOX COUNTY, TENNESSEE, et al. | ) | |
| Defendant. | ) | |

Before: CLAY, GIBBONS, and BLOOMEKATZ, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Brian Eugene Hux filed this suit under 42 U.S.C. § 1983 and Tennessee state law against Defendants Randall Williams and Knox County, Tennessee. Under § 1983, Plaintiff claimed that Defendant Williams violated his Fourth and Fourteenth Amendment rights against excessive force and unlawful stops and seizures. Plaintiff also raised a *Monell* claim against Defendant Knox County under a failure-to-train and supervise theory. Defendant Williams filed a motion to dismiss Plaintiff's complaint, but the district court denied granting qualified immunity to Defendant Williams as to Plaintiff's § 1983 Fourth Amendment unlawful seizure claim. Defendant Williams now appeals the district court's denial of qualified immunity. For the reasons set forth below, we **AFFIRM** the district court's judgment denying qualified immunity.

## I.   BACKGROUND

### A.  Factual Background

Around 3:19 P.M. on October 10, 2022, Defendant Williams was on patrol when he received a "be on the lookout" ("BOLO") call from the Knox County Sheriff's Office ("KCSO") to search for a man named Matthew Messer, who was suspected of evading the police after being placed on "police hold" pending his treatment at the University of Tennessee Medical Center ("UTMC").  First Amended Complaint ("FAC"), R. 20, PageID #96 ¶ 29.  The dispatcher told Defendant that Messer was a 6-foot-tall 34-year-old white male with long brown hair.  Defendant also knew that Messer had been charged with non-violent misdemeanors.

Around 4:18 P.M. that same day, Defendant was on patrol and discovered Plaintiff walking along grass next to a roadway in South Knox County, Tennessee.  Defendant thought Plaintiff matched Messer's descriptions, but Plaintiff was a fair bit different.  At the time, Plaintiff was 64 years old, measured 5-feet 9-inches in height, weighed around 150 pounds, had a beard and mustache, and had long hair that had been dyed purple closer to his roots and was brown towards its ends.  Regardless, Defendant "initiated" his patrol vehicle's emergency lights and "attempted to make contact."  *Id.* at PageID #97 ¶ 30.

This encounter went poorly.  Upon exiting his vehicle, Defendant ran towards Plaintiff and twice shouted "[c]ome here," to which Plaintiff twice responded, "what for?"  *Id.* at PageID #97 ¶ 33; Body Camera Footage, R. 16, at 00:32–00:36.  Plaintiff moved briskly away from Defendant onto the pavement for a couple of seconds while Defendant ran towards him with a taser.  Plaintiff then started to run away from Defendant.  Body Camera Footage, R. 16, at 00:40.  Once Defendant got within 8 feet of Plaintiff, he warned Plaintiff that he was going to tase him and pulled the trigger.  The taser prongs hit Plaintiff and he seized up and crashed face-first onto the pavement.

While blood "streamed freely" from Plaintiff's head and face and while Plaintiff "moan[ed] and groan[ed] in pain," Defendant instructed Plaintiff not to "fucking move" and that he would "tase [Plaintiff] again, if [Plaintiff] move[d]." FAC, R. 20, at PageID #98 ¶ 35; Body Camera Footage, R. 16, at 02:12–02:15. Defendant also blamed Plaintiff's injuries on his decision to run and asked him why he was "running from the cops," to which Plaintiff explained that "he had got a warrant" for his arrest. FAC, R. 20, PageID #98 ¶ 36; Body Camera Footage, R. 16, at 04:30–04:50.

Defendant radioed for an ambulance. Plaintiff was admitted to the intensive care unit at UTMC for treatment, where a University of Tennessee security officer quickly confirmed that Plaintiff was not Matthew Messer. As a result of this incident, Plaintiff suffered several "severe and life-threatening injuries, including an 'intracranial hemorrhage and skull base fracture with associated narrowing of the basilar artery.'" FAC, R. 20, PageID #101 ¶ 45. Additionally, KSCO impounded and auctioned off Plaintiff's car while he was recovering at UTMC. Plaintiff now lives in a residential facility because he is no longer able to live without assistance.

### B. Procedural History

In 2023, Plaintiff filed this suit against Defendant Williams, several unnamed officer defendants, and Knox County. He claimed that Defendant Williams violated his Fourth and Fourteenth Amendment rights against excessive force and unlawful stops and seizures under 42 U.S.C. §§ 1983 and 1988. He also raised a *Monell* claim against Defendant Knox County under a failure-to-train and supervise theory under 42 U.S.C. §§ 1983 and 1988. Plaintiff then raised Tennessee battery and negligence claims against Defendants Williams and Knox County, as well as a reckless or intentional infliction of emotional distress claim against Defendant Williams.

As relevant to the instant case, Defendant Williams moved to dismiss Plaintiff's excessive force, unlawful stop and seizure, and Tennessee state law claims on the grounds that those claims

were barred by qualified immunity. The district court granted in part and denied in part this motion, first declining to dismiss Plaintiff's Fourth Amendment unlawful stop and seizure claim by finding that qualified immunity did not apply to Defendant Williams' alleged conduct. The court, however, found that qualified immunity protected Defendant Williams from Plaintiff's excessive force and Tennessee battery claims and subsequently dismissed those claims.[1] The court also dismissed the remaining state law claims against Defendant Williams. Defendant Williams timely appealed the district court's denial of qualified immunity as to Plaintiff's Fourth Amendment unlawful stop and seizure claim.

## II.    DISCUSSION

### A.  Standard of Review

We review "*de novo* a district court's denial of a defendant's motion to dismiss on qualified immunity grounds." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). We may do so "on an interlocutory basis so long as [the dismissal] 'turns on an issue of law.'" *DeVooght v. City of Warren*, 157 F.4th 893, 898 (6th Cir. 2025) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). "[W]e lack jurisdiction to review orders denying qualified immunity if genuine factual issues remain." *Id.*

"[T]o overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged

---

[1] The district court relied on our precedents in *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) and *Perez v. Simpson*, 83 F.4th 1029, 1031 (6th Cir. 2023) to hold that Defendant Williams did not use excessive force when he tased Plaintiff because Plaintiff actively resisted arrest by fleeing from Defendant Williams. While Plaintiff's § 1983 Fourth Amendment excessive force claim is not properly before us on interlocutory appeal, we note that our precedents support such a holding only if a suspect is actively resisting arrest. Relatedly, we have previously held that an "officer's simple request to 'come here,'" without more, did not constitute a stop because the individual "could have politely declined to do so, and walked away." *United States v. Matthews*, 278 F.3d 560, 562 (6th Cir. 2002), *abrogated on other grounds by United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011).

conduct.'" *Marvaso*, 971 F.3d at 605 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "This is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored." *Id.* (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

## B. Analysis

### 1. Jurisdiction on Interlocutory Appeal

As a threshold matter, Plaintiff contends that we lack jurisdiction to consider the district court's denial of qualified immunity to Defendant Williams over Plaintiff's § 1983 Fourth Amendment unlawful seizure claim. Plaintiff claims that Defendant's appeal improperly "cross[es] over the fact-law line," and thus genuine factual issues remain which make interlocutory review inappropriate. Plaintiff's Br., at 21 (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

We disagree. We have jurisdiction to review a district court's denial of qualified immunity at the motion-to-dismiss stage. *DeLanis v. Metro. Gov't of Nashville & Davidson Cnty.*, 160 F.4th 732, 737 (6th Cir. 2025). Plaintiff's concern that Defendant improperly raises questions of fact on interlocutory appeal, as explained in *Johnson v. Jones*, 515 U.S. 304, 307 (1995), "applies only to cases that reach summary judgment." *Delanis*, 160 F.4th at 737. "Because we must credit all well-pleaded facts at the pleading stage, no factual disputes exist and *Johnson* thus is 'not triggered.'" *Id.* (quoting *Myers v. City of Centerville*, 41 F.4th 746, 757 (6th Cir. 2022)). Accordingly, we may consider Defendant Williams's arguments against the district court's denial of qualified immunity.

### 2. Plaintiff has a Constitutional Right and a Legally Cognizable Interest to Be Free from Unlawful Seizures

Defendant Williams first claims that the Plaintiff's outstanding warrant for his arrest deprived him of any cognizable liberty interest or legal right against being unlawfully stopped and

detained. According to Defendant, this defeats Plaintiff's § 1983 Fourth Amendment claim in two ways: (1) Plaintiff purportedly suffered no cognizable injury to have standing to sue; and (2) Plaintiff could not be deprived of a liberty interest he did not have.

These propositions are not supportable. There is no question that Plaintiff has a right to challenge the unreasonable seizure of his own person. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891))). This right applies regardless of whether an individual has outstanding warrants for their arrest. *Cf. United States v. Ivy*, 165 F.3d 397, 404 (6th Cir. 1998) ("The guarantees of the Fourth Amendment do not expire merely because an individual is suspected of a crime; indeed, it is in such a situation that the protections against illegal police search and seizure become most meaningful. The occasional benefits that compliance with the Fourth Amendment confers upon the guilty must be recognized as a necessary consequence of guaranteeing constitutional protections for all members of our community."). Thus, an outstanding warrant does not rob an individual of a liberty interest against the unreasonable seizure of their person.

Against this backdrop, we reject both of Defendant's approaches. Regarding standing, "[a] party invoking federal-court jurisdiction must show (1) an injury in fact, (2) causation, and (3) redressability." *Mackinac Ctr. for Pub. Pol'y v. United States Dep't of Educ.*, 175 F.4th 692, 700 (6th Cir. 2026) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "An injury in fact is 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330,

339 (2016)). An injury to one's constitutional rights is a prototypical injury in fact. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Plaintiff alleges an injury to his Fourth Amendment constitutional right against unreasonable seizure that was caused by Defendant Williams and can be redressed by this Court. Accordingly, Plaintiff has standing to sue Defendant for this alleged deprivation of his constitutional rights. *See id.* at 380–81.

Similarly, Defendant's argument that Plaintiff had no liberty interest that the alleged unlawful seizure could deprive also fails. To adequately plead a § 1983 claim, a plaintiff must allege "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). As discussed, there is no question that Plaintiff has a constitutional right against unlawful seizures and that Defendant, as alleged, deprived him of that right. *See Terry*, 392 U.S at 9. Thus, Plaintiff's § 1983 Fourth Amendment unlawful seizure claim does not fail as a matter of law, and the district court did not err when it found that Plaintiff had sufficiently alleged a violation of that right.

### 3. Qualified Immunity

#### a. *Constitutional Right Violation*

The Fourth Amendment protects the people "against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry*, 392 U.S. at 19 n.16). "A warrantless search or seizure is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Pearce*, 531 F.3d 374, 379–80 (6th Cir. 2008) (quoting *United*

*States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994)). Those exceptions include "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause.'" *Id.* at 380 (quoting *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004)).

At issue in this appeal is the second exception: whether Defendant Williams could have lawfully "conduct[ed] a brief, investigatory stop" because he "ha[d] a reasonable articulable suspicion that criminal activity [was] afoot." *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "To determine whether a particular stop is permissible under the Fourth Amendment, a court 'must look at the totality of the circumstances of the case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (citation modified). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123. "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 123–24 (quoting *Terry*, 392 U.S. at 27).

Defendant contends that he had or acquired reasonable suspicion to detain Plaintiff before or during his encounter with Plaintiff. First, Defendant claims that the total mix of information available to Defendant from the BOLO call description of Messer and what Defendant observed

would have furnished any reasonable officer with the reasonable suspicion necessary to stop and detain Plaintiff. Second, he claims that Plaintiff's "flight" from Defendant also provided reasonable suspicion to then justify an investigatory stop.

Defendant lacked reasonable suspicion to conduct a *Terry* stop on Plaintiff. Prior to his confrontation with Plaintiff, Defendant was only armed with the BOLO call's description of Messer and Defendant's observations of Plaintiff's physical appearance. As discussed, the BOLO call described Messer as a 6-foot tall 34-year-old white male with long brown hair. From Defendant's perspective, it was unreasonable to stop Plaintiff from this information alone. Plaintiff was a 5-foot 9-inch 64-year-old white male with facial hair and long hair, the color of which was either partially or entirely purple. Though Plaintiff was initially walking a few yards from Defendant in the shade at the start of the encounter, thereby possibly making it difficult for Defendant to differentiate purple from brown and discern Plaintiff's exact height, Plaintiff's relatively advanced age should have immediately disqualified him as Messer in the eyes of a reasonable officer. The district court thus did not err when it found that these circumstances did not justify reasonable suspicion to detain Plaintiff.

Plaintiff's subsequent provoked flight also did not supply Defendant with reasonable suspicion. Normally, "when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." *Wardlow*, 528 U.S. at 125. "[A]ny 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

To be sure, an individual's conduct during an unlawful stop may give rise to reasonable suspicion. For example, "if a suspect's response to an illegal stop is itself a new distinct crime,

then the police constitutionally may arrest the suspect for that crime." *United States v. Allen*, 619 F.3d 518, 526 (6th Cir. 2010) (citation modified). Additionally, an individual's unprovoked flight from the police may furnish an officer with the necessary reasonable suspicion to conduct an investigatory stop. *See Wardlow*, 528 U.S. at 125; *see also United States v. Jeter*, 721 F.3d 746, 753–54 (6th Cir. 2013).

Neither of these situations, however, applies in the instant appeal. Plaintiff initially ignored Defendant's two commands to "come here," as was his right. Body Camera Footage, R. 16, at 00:32–00:36; *see Wardlow*, 528 U.S. at 125. Plaintiff did not begin his "flight," or his running away from Defendant, until after Defendant began to run toward Plaintiff. Plaintiff's flight was thus provoked and in response to being charged by Defendant. *Cf. Jeter*, 721 F.3d at 754 ("If police officers put a defendant in reasonable fear of physical harm, that might also qualify as provocation."). In such a scenario, Plaintiff's flight, without more, does not provide Defendant with the necessary reasonable suspicion to conduct an investigatory stop. The district court thus did not err when it found that Defendant provoked Plaintiff's flight and thus lacked reasonable suspicion to lawfully detain Plaintiff.

### b. *Clearly Established Law*

When a plaintiff demonstrates that an "'officer's conduct violated a constitutional right[,]' . . . we next ask 'whether the right was clearly established . . . in light of the specific context of the case.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). "A right is clearly established for purposes of overcoming the qualified immunity defense only when 'existing precedent [has] placed the statutory or constitutional question beyond debate,' although we do not require 'a case directly on point.'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020) (quoting *al-Kidd*, 563 U.S.

at 741). Plaintiff "bears the burden of showing that an officer is not entitled to qualified immunity." *Schulkers v. Kammer*, 955 F.3d 520, 533 (6th Cir. 2020). Furthermore, "where the violation was sufficiently 'obvious' under the general standards of constitutional care[,] . . . the plaintiff need not show 'a body' of 'materially similar' case law" to demonstrate a clearly established right. *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Plaintiff easily meets this burden. It was clearly established at the time of the offense that an officer must have reasonable suspicion to conduct an investigatory stop. *See Terry*, 392 U.S. at 30. As discussed above, Defendant Williams never acquired reasonable suspicion to detain Plaintiff. Defendant's conduct thus violated Plaintiff's clearly established right against unreasonable seizures of his person.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment denying qualified immunity.